No. 05-688

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 202

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

NORMAN B. FRITZ,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2004-355,
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Martin W. Judnich, Law Office of Martin W. Judnich PC,
Missoula, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, County Attorney; Dale Mrkich, Deputy County
Attorney, Missoula, Montana

Submitted on Briefs:  June 28, 2006

Decided:  August 23, 2006

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Norman B. Fritz pled guilty to operation of an unlawful clandestine laboratory, a felony, in violation of § 45-9-132, MCA.  The Fourth Judicial District Court, Missoula County, sentenced Fritz to twenty years in the Montana State Prison, with ten years suspended.  Fritz appeals the District Court's decision denying his motion to suppress the portable methamphetamine laboratory found in the vehicle he was driving.

¶2    The issue on appeal is whether the District Court correctly determined that reasonable cause existed for the search of the Ford Ranger and thus appropriately denied Fritz's motion to suppress the methamphetamine laboratory.

¶3    We affirm.

## BACKGROUND

¶4    On June 18, 2004, two probation officers, including Dave Sonju with the Intensive Supervision Program (ISP), arrived at Jamie Lee Feltman's residence to conduct a search.  After calling for backup, the officers received support from police officers and deputies with the Missoula City Police Department and Missoula County Sheriff's Office.  The officers and deputies found two males at the residence, as well numerous items of suspected dangerous drugs and drug paraphernalia.  Feltman's two children, also found at the scene, were removed by the Department of Family Services.  The children subsequently told social workers that their mother had instructed them to hide dangerous drugs in a couch.  Officers and deputies uncovered a coin purse and plastic baggies containing methamphetamine hidden in the couch described by the children.  Although a

2

series of events involving Feltman and other individuals took place, only those facts pertinent to this opinion are discussed below.

¶5 During the time probation and law enforcement remained at Feltman's residence, defendant Fritz pulled up the driveway in a blue Ford Ranger, came to the door and asked for Feltman. Detective Jason Huntsinger, dressed in plain clothes, stated that Feltman was not at home and asked Fritz to leave—which Fritz did, in the Ford Ranger. Some time later, Fritz returned to Feltman's apartment, at which point officers had Fritz come inside and asked for his name. Officers determined that Fritz was a probationer who failed to report to his probation officer earlier in the month as required. After determining that a warrant existed for Fritz's arrest, law enforcement transported Fritz to the Missoula County Detention facility.

¶6 After Fritz was removed, Feltman, who had been arrested for her involvement with drug dealing, was escorted from the building by officers when she suggested she could provide information about others in exchange for avoiding incarceration. Despite the fact that Detective Huntsinger told Feltman that it was too late to cut a deal, Feltman nodded towards the Ford Ranger that Fritz had been driving and asked, "What if I told you there was a lab in that truck?" Detective Huntsinger asked Feltman how she knew such information. Feltman responded that Fritz had told her earlier in the day not to tell law enforcement about his truck because he had chemicals inside. Feltman also stated that a few days earlier, Fritz had come to her residence asking for some "Red P" (red phosphorous), a chemical commonly used in manufacturing methamphetamine.

3

¶7 Officers noted that both times Fritz arrived at Feltman's home he was driving the Ford Ranger. Knowing that Fritz was a probationer, Officer Sonju ordered deputies to retrieve the keys from Fritz's property at the jail even though a check on the vehicle's plates indicated that the truck was not registered to Fritz. Upon opening the vehicle, officers observed mail addressed to Fritz lying on the seat. Officers also found a large purple plastic tub sitting in the backseat containing glass jars, tubing and chemicals. A certified lab investigator with the Sheriff's Department arrived on the scene and confirmed that the contents in the tub are used in the production of methamphetamine.

## STANDARD OF REVIEW

¶8 The standard of review of a district court's denial of a motion to suppress evidence is whether the court's findings are clearly erroneous. To determine whether a finding of fact is clearly erroneous, this Court ascertains whether the finding is supported by substantial evidence, whether the district court misapprehended the effect of the evidence, and whether the Court is nevertheless left with a definite and firm conviction that the district court made a mistake. We further review a district court's denial of a motion to suppress to determine whether the court's interpretation and application of the law are correct. This Court's review is plenary as to whether the district court correctly interpreted and applied the law. *State v. Wetzel*, 2005 MT 154, ¶ 10, 327 Mont. 413, ¶ 10, 114 P.3d 269, ¶ 10.

4

## DISCUSSION

**¶9      Did the District Court correctly determine that reasonable cause existed for the search of the Ford Ranger and thus appropriately deny Fritz's motion to suppress the methamphetamine laboratory?**

¶10      The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals against unreasonable searches and seizures. *State v. Shaw*, 2005 MT 141, ¶ 7, 327 Mont. 281, ¶ 7, 114 P.3d 198, ¶ 7 (citation omitted). Probationers, however, are subject to the lesser "reasonable cause" standard due to their diminished expectation of privacy and because the probation officer is in the best position to determine what level of supervision is necessary to provide rehabilitation of the probationer and safety for society. *State v. Burchett*, 277 Mont. 192, 195-96, 921 P.2d 854, 856 (1996) (citations omitted). We analyze whether a search was properly executed pursuant to the reasonable cause standard by reviewing the totality of the circumstances. *State v. Beaudry*, 282 Mont. 225, 230, 937 P.2d 459, 462 (1997).

¶11      Fritz argues that the search of the Ford Ranger was unreasonable because the truck was not registered in Fritz's name and officers did not corroborate Feltman's statement regarding the truck. We disagree that the search was unreasonable, concluding that under the totality of the circumstances, reasonable cause existed for conducting a probationary search. Officers knew that Fritz was a probationer who had failed to report to his probation officer as required. They also knew that Fritz was associating with another probation violator at a residence where drugs and paraphernalia were found.

5

Feltman provided explicit information about a laboratory being stored in the truck, which she backed with a reasonable explanation when questioned by the officers. Officers had reasonable cause to believe the Ford Ranger was under Fritz's control as he was observed driving the truck at two separate times. Moreover, as the State persuasively argues, pursuant to *State v. Galpin*, 2003 MT 324, ¶ 43, 318 Mont. 318, ¶ 43, 80 P.3d 1207, ¶ 43, methamphetamine cooks frequently conceal their portable laboratories by using vehicles registered in someone else's name. In light of the totality of the circumstances, reasonable cause existed for the officers to search the Ford Ranger.

¶12 Fritz also contends that the search was unreasonable because Fritz's assigned probation officer was never consulted with regard to the search. However, this Court has specifically held that the fact that law enforcement officers conducted or assisted in a search does not render an otherwise lawful probation search invalid; in fact, cooperation and communication between police and probation officers is to be encouraged as an important aid to effective administration of the probation system. *Burchett*, 277 Mont. at 196-97, 921 P.2d at 856-57 (citations omitted). "A requirement that only the supervising probation officer be allowed to evaluate the facts and circumstances surrounding a possible probation violation, and then determine if reasonable grounds exist to warrant a search, would greatly hamper the effectiveness of supervision during probation and diminish the public safety that supervision is intended to assure." *State v. Olmsted*, 1998 MT 301, ¶ 45, 292 Mont. 66, ¶ 45, 968 P.2d 1154, ¶ 45.

¶13   As a final, alternative argument, Fritz unpersuasively asserts that the police officers in this case used the probation officers as subterfuge for a criminal investigation. *See United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991).  We find no merit to this argument given that the officers at the scene were conducting a valid criminal investigation of Feltman, completely unrelated to Fritz, when Fritz twice appeared, creating the circumstances leading to his arrest and the search.

¶14   Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE