DA 06-0287

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 7

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

KARSTEN K. SMITH,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
                     In and For the County of Missoula, Cause No. DC-02-133
                     Honorable John S. Henson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

            Mathew M. Stevenson, Attorney at Law, Missoula, Montana

       For Appellee:

            Hon. Mike McGrath, Attorney General; John Paulson,
            Assistant Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney; Andrew W.
            Paul, Deputy County Attorney, Missoula, Montana

                      Submitted on Briefs:  September 12, 2007

                                 Decided:  January 15, 2008

Filed:

                                 Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Karsten Karl Smith (Smith) appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on his convictions for felony criminal possession of dangerous drugs and misdemeanor criminal possession of drug paraphernalia.  We affirm in part and remand.

¶2     Smith raises the following issues on appeal:

¶3     1.  Did the District Court err in denying Smith's motion to suppress evidence?

¶4     2. Did the District Court err in denying Smith's motion to dismiss the charges based on a violation of his right to a speedy trial?

## BACKGROUND

¶5     On March 11, 2002, probation and parole officer Kathleen Beccari (Beccari) met with probationer Mark Dornan (Dornan).  At the time, Dornan was living in Missoula, Montana, with his girlfriend Delores Shepherd (Shepherd).  Shepherd's sister, Darlene Garcia (Garcia), who also was on probation, was supposed to be living at the same residence with Dornan and Shepherd.  Dornan informed Beccari that Garcia had not lived with them for several months and, instead, had been living with her boyfriend Smith in a trailer on the Pruyn Ranch.  Beccari reported this information to Garcia's probation officer, Tom Forsyth (Forsyth).  Forsyth contacted Shepherd, who confirmed that Garcia had not lived with Dornan and Shepherd for several months and was living with Smith.  Forsyth met with Garcia the following day and Garcia admitted that, although she previously reported she lived with Dornan and Shepherd, she actually was living with

2

Smith on the Pruyn Ranch. Garcia then submitted to a drug test, which tested positive for methamphetamine, and she was arrested for violating the conditions of her probation. Based on the unreported change in residence and the positive drug test, Forsyth also determined a probation search of Garcia's residence at the Pruyn Ranch was justified.

¶6     Later that day, Forsyth, Beccari, a third probation officer, and officers from the Missoula County Sheriff's Office accompanied Garcia to the Pruyn Ranch. Garcia indicated she was fearful of Smith's reaction to a search of the trailer and stated she did not have a key to the trailer. The officers gained entry by prying open the trailer's back door. Upon searching, the officers found weapons, drug paraphernalia, and items used to manufacture and distribute drugs. They also found Garcia's purse and located some of her clothing in a closet.

¶7     After searching the trailer, the officers decided to apply for a search warrant to search a bus parked near the trailer. While they waited for the search warrant to arrive, Smith drove up to the trailer in a pickup truck. Based on the drug-related items found in the trailer, as well as one officer's knowledge that Smith's driver's license was suspended, Smith was arrested. In a search of his person incident to the arrest, officers discovered a large amount of cash, a marijuana pipe and a vial which Smith admitted contained methamphetamine. The officers later obtained a search warrant for Smith's truck and discovered a leather pouch containing nine bindles of methamphetamine. The search of the bus revealed chemical precursors to methamphetamine.

¶8     On April 16, 2002, the State of Montana (State) charged Smith by information with felony criminal possession of dangerous drugs and misdemeanor criminal

3

possession of drug paraphernalia. The State amended the information on June 10, 2002, to add a third charge of felony criminal possession of dangerous drugs with intent to distribute. Smith moved to suppress all evidence obtained in the searches. The District Court denied Smith's motion to suppress on February 3, 2003.

¶9 The District Court eventually scheduled a jury trial for August 11, 2004. In late June of 2004, Smith moved to dismiss the charges against him on the basis that his constitutional right to a speedy trial had been violated. The District Court denied this motion. The court then vacated the trial setting without rescheduling the trial, and nothing further happened in this matter until the District Court ordered the parties to appear for a status conference on April 5, 2005. After several continuances of the status conference, the court scheduled the trial for November 9, 2005. On June 28, 2005, Smith again moved to dismiss the charges against him based on lack of a speedy trial. The District Court held a hearing and denied Smith's motion. Subsequently, in February of 2006, Smith appeared in the District Court and pled guilty to the offenses of criminal possession of dangerous drugs and criminal possession of drug paraphernalia pursuant to a plea agreement with the State, reserving his right to appeal the court's denial of his pretrial motions. The District Court accepted Smith's guilty pleas, sentenced him, and entered judgment on the convictions and sentences. Smith appeals.

## DISCUSSION

¶10 *1. Did the District Court err in denying Smith's motion to suppress evidence?*

¶11 Smith's motion to suppress all the evidence seized during the searches in this case asserted that the initial warrantless search of his trailer was unlawful because it was not

4

justified as a probation search or by any other exception to the search warrant requirement. As a result, according to Smith, the subsequent searches of his person, bus and pickup truck also were unlawful as emanating from the initial unlawful search of the trailer.

¶12 The District Court determined that Garcia's unreported change in residence and positive drug test gave her probation officer, Forsyth, reasonable cause to conduct a probationary search of Garcia's new residence, which was Smith's trailer. The court further determined that Smith's subsequent arrest, the search of his person pursuant to that arrest, and the searches of his vehicles pursuant to warrants all were lawful. Consequently, the District Court denied Smith's motion to suppress evidence. Smith asserts error.

¶13 We review a district court's ruling on a motion to suppress evidence to determine whether its findings of fact are clearly erroneous and its interpretation and application of the law correct. *State v. Fritz*, 2006 MT 202, ¶ 8, 333 Mont. 215, ¶ 8, 142 P.3d 806, ¶ 8.

¶14 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution guarantee an individual's right to be free from unreasonable searches and seizures. It is well-established that a search conducted in the absence of a properly issued warrant based on probable cause is *per se* unreasonable absent a recognized exception to the warrant requirement. *See e.g. State v. Copelton*, 2006 MT 182, ¶ 10, 333 Mont. 91, ¶ 10, 140 P.3d 1074, ¶ 10 (citation omitted).

¶15 A search of a probationer's residence or effects, however, may be conducted without a search warrant and pursuant to the lesser standard of "reasonable cause," rather

than probable cause. *Fritz*, ¶ 10; *State v. Kriesel*, 2000 MT 144, ¶ 12, 300 Mont. 44, ¶ 12, 2 P.3d 831, ¶ 12. The rationale for applying the lesser standard is that a probationer has a diminished expectation of privacy and a supervising probation officer is in a better position to determine the level of supervision necessary to provide rehabilitation to the probationer and safety to the community. *Fritz*, ¶ 10; *Kriesel*, ¶ 13. Determining the existence of reasonable cause to conduct a probationary search involves a factual inquiry based on the totality of the circumstances. *Fritz*, ¶ 10; *Kriesel*, ¶ 13.

¶16 Smith argues that the District Court's finding that Forsyth had sufficient information on which to determine Garcia was living at Smith's trailer on the Pruyn Ranch is clearly erroneous and cannot support the court's further finding that Forsyth had reasonable cause to conduct a probationary search of the trailer. We disagree.

¶17 Garcia had been reporting to Forsyth that she resided with Shepherd and Dornan. On March 11, 2002, however, Dornan's probation officer informed Forsyth that Dornan had stated Garcia was currently living with Smith at the trailer on the Pruyn Ranch. Forsyth then spoke directly with Shepherd, who confirmed that Garcia was no longer living with her and Dornan, but was living with Smith. Furthermore, Garcia met with Forsyth on March 12, 2002, and admitted she was living with Smith and had failed to inform Forsyth of her change in residence. Thus, Forsyth had first-hand information—including Garcia's own admission—that Garcia was living with Smith and had changed her residence in violation of the conditions of her probation. We conclude the District Court's finding of fact in this regard is not clearly erroneous.

6

¶18     In addition, Garcia provided a urine sample for drug testing at Forsyth's request during their March 12 meeting.  The drug test showed a positive result for methamphetamine use.  Thus, Forsyth had the additional information that Garcia was using drugs in violation of her probation conditions, and reason to believe evidence of drugs and drug use might be found at her residence.  We agree with the District Court that, under the totality of the circumstances—including Garcia's unreported change of residence and positive drug test—Forsyth had reasonable cause to search Smith's trailer on the Pruyn Ranch where Garcia currently was living.  Thus, we further conclude that the search of Smith's trailer was justified as a probationary search.

¶19     Smith also argues, however, that Forsyth's probationary search of his trailer was unlawful because Forsyth failed to follow policies and procedures set by the Montana Department of Corrections Probation and Parole Bureau, in that Forsyth "failed to verify [Garcia] lived at the trailer, that she had Smith's permission to live at the trailer and that Smith understood the implications of allowing [Garcia] to live in the trailer."  However, Smith fails to cite the specific policies and procedures he asserts were violated and fails to provide legal authority in support of his contention that a violation of such policies or procedures would render a probationary search unlawful.  We do not address arguments which are not supported by citation to legal authority.  *See e.g. State v. Hicks*, 2006 MT 71, ¶ 22, 331 Mont. 471, ¶ 22, 133 P.3d 206, ¶ 22; M. R. App. P. 12(1)(f).

¶20     Having determined that the search of Smith's trailer was legally justified as a probationary search of Garcia's residence, and absent any other challenge by Smith to the

legality of the searches of his person and vehicles, we conclude the District Court did not err in determining these searches were lawful.

¶21   We hold that the District Court did not err in denying Smith's motion to suppress evidence.

¶22   ***2. Did the District Court err in denying Smith's motion to dismiss the charges based on a violation of his right to a speedy trial?***

¶23   Smith moved the District Court to dismiss the charges against him on two occasions, asserting the State had violated his right to a speedy trial. The District Court denied both motions. In its second order denying Smith's motion, the court observed that, although it found the length of delay in bringing the case to trial troubling, the State had met its burden of establishing the delay had not prejudiced Smith. Thus, the court determined Smith's right to a speedy trial was not violated. Smith contends the District Court's conclusion in this regard is erroneous.

¶24   On appeal, both Smith and the State analyze this speedy trial issue pursuant to the standards we originally set forth in *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866. However, after the parties briefed this appeal, we rendered our decision in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815, in which we established a new framework for analyzing speedy trial claims. Thus, neither the District Court nor the parties had the opportunity to analyze the speedy trial issue under this new framework. We deem it appropriate that the District Court apply the *Ariegwe* analysis in the first instance. For that reason, we decline to resolve this issue and, instead, remand it to the District Court without prejudice to a timely appeal thereafter by either party.

8

¶25 Affirmed in part and remanded for further proceedings consistent with this opinion.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice James C. Nelson concurs and dissents.

¶26 I concur in our Opinion as to Issue 1. I dissent from our Opinion as to Issue 2 for the same reasons that I dissented from our remand order in *State v. Billman*, No. DA 06-0753, issued November 7, 2007.

/S/ JAMES C. NELSON