FILED

April 26 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0207

DA 14-0207

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 96

STATE OF MONTANA,

Plaintiff and Appellee,

v.

ROBERT LEE CRAWFORD,

Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 12-49
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Chief Appellate Defender, Chad R. Vanisko, Assistant
Appellant Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

Steven Eschenbacher, Lake County Attorney, James Lapotka, Deputy
County Attorney, Polson, Montana

Submitted on Briefs:  February 17, 2016

Decided:  April 26, 2016

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Robert Lee Crawford appeals his conviction from the Twentieth Judicial District Court, Lake County, for criminal possession of dangerous drugs. We affirm.

¶2 We address the following issues on appeal:

(1) *Whether the District Court erred in denying Crawford's motion to suppress evidence of methamphetamine that law enforcement officers found on Crawford's person after conducting a search incident to his arrest for violating the terms of his parole.*

(2) *Whether Crawford received ineffective assistance of counsel when his counsel did not file proposed findings of fact and conclusions of law following the evidentiary hearing relating to Crawford's suppression motion.*

(3) *Whether the District Court abused its discretion by denying Crawford's third discovery request.*

(4) *Whether the District Court erred by denying Crawford's posttrial motion to dismiss based upon the Court's failure to arraign him on the Second Amended Information.*

(5) *Whether the District Court adequately addressed Crawford's complaints concerning his assigned counsel.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On December 23, 2010, Crawford was released on parole in Butte-Silver Bow County after his incarceration at the Montana State Prison for multiple drug-related felony convictions. As a condition of his parole, a travel restriction was imposed upon Crawford, which required that he obtain written permission from his parole officer, Karley Kump (Officer Kump), before travelling outside the counties of Silver Bow, Beaverhead, Jefferson, and Deer Lodge.

2

¶4    On March 13, 2012, Flathead Tribal Police Officer Casey Couture (Officer Couture) was on patrol in Lake County when he observed a vehicle with a single operating headlight. Officer Couture initiated a traffic stop and identified Crawford as the driver of the vehicle. Officer Couture noticed that there were four passengers in the vehicle, one of whom Officer Couture recognized as Asa Lehrke (Lehrke) based upon Lehrke's prior involvement in the sale of illegal drugs. Officer Couture arrested Lehrke on an outstanding warrant and issued a warning to Crawford regarding his inoperative headlight. While being transported, Lehrke told Officer Couture that two of the men in the vehicle were armed robbery suspects and another one of the men produced methamphetamine.

¶5    After returning to the Flathead Tribal Police Station, Officer Couture searched the Montana Correctional Offender Network database and learned that Crawford was on parole in Silver Bow County. Officer Couture contacted the Butte-Silver Bow County Probation and Parole Office and left a voice message, inquiring as to whether Crawford was in violation of his parole. Officer Kump returned Officer Couture's call and spoke with Northwest Drug Task Force Agent Arlen Auld (Agent Auld). Officer Kump advised Agent Auld that Crawford was in violation of his parole, explaining that Lake County was outside his assigned travel district and Crawford did not have permission to travel outside the district. Officer Kump requested that Officer Couture arrest Crawford for violating the terms of his parole, and Agent Auld relayed this information to Officer Couture.

¶6     On March 17, 2012, while on patrol in Lake County, Officer Couture and Lake County Sheriff's Deputy Levi Read (Deputy Read) observed Crawford's vehicle pull into a local gas station.  Based upon the information received from Officer Kump, Officer Couture and Deputy Read initiated a traffic stop of Crawford's vehicle and placed Crawford under arrest for violating his parole.  After conducting a search incident to arrest, the officers discovered two vials in Crawford's pants pocket.  Subsequent testing at the Montana State Crime Lab revealed that the vials contained methamphetamine.

¶7     On March 29, 2012, the State charged Crawford by Information with criminal possession of dangerous drugs with the intent to distribute.  The Court subsequently arraigned Crawford on that charge.  On April 25, 2012, the State amended the Information and added a charge of felony criminal forfeiture.  On August 17, 2012, the State filed a Second Amended Information, dismissing the charge of criminal forfeiture and reducing the charge of criminal possession with intent to the lesser-included offense of criminal possession of dangerous drugs.  The District Court did not arraign Crawford on the Second Amended Information.

¶8     On July 26, 2013, Crawford filed a third request for discovery in which he requested that the State provide copies of email exchanges between law enforcement and parole officers and information regarding Lehrke as an informant.  Crawford also maintained that the arrest video the State provided was not the original video, and Crawford requested he be allowed to view the original video because he believed that the video produced by the State had been altered.  The District Court denied Crawford's

4

request, concluding that the State had complied fully with its discovery obligations under § 46-15-322, MCA.

¶9 On February 5, 2013, Crawford filed a motion to suppress the evidence of methamphetamine found on his person and alleged that the arresting officers had no authority to detain him. Crawford maintained that the search was unlawful because the arresting officers used Crawford's parole status as a false pretense for their real intent, which Crawford argued was to seek out a purported "meth lab." After Crawford and the State submitted briefing, the District Court conducted a hearing on Crawford's motion to suppress. The State thereafter filed proposed findings of fact and conclusions of law with the District Court, but Crawford's trial counsel did not. The District Court denied Crawford's motion to suppress, concluding that Officer Couture and Deputy Read lawfully arrested Crawford for violating the terms of his parole and the officers performed a legal search incident to arrest whereupon they discovered the two vials of methamphetamine.

¶10 On the first day of trial on December 2, 2013, Crawford requested that he be given a copy of the Second Amended Information. The court informed Crawford that he would need to discuss the Second Amended Information with his attorney, which led to the following exchange regarding Crawford's trial counsel:

> Court: Mr. Crawford, you have very able counsel. You would be well-advised to work through him and in front of the jury let him—
>
> Crawford: I don't have a whole lot of faith here, your Honor.
>
> Court: Well, he's a very competent attorney

5

Crawford: I'm the one facing 100 years here.

¶11 On the second day of trial on December 3, 2013, Crawford and the District Court again engaged in an exchange regarding Crawford's counsel:

Court: Mr. Stenerson has been your attorney since August. Have you been satisfied with the services of Mr. Stenerson?

Crawford: He has been my attorney since November of 2012. And he has done more in my case than anybody else has. But as far as things getting done in a timely manner, things being followed through with, no. I think— I feel strongly there's prejudice against me because there's items that have been brought in in front of the jury, a whole file full of pictures that—

Court: As to the claim of ineffective assistance of counsel, given the fact that Mr. Stenerson, it sounds like, has done a professional job and he has been your counsel for a year now, there isn't anything that at this stage of the proceedings would lead a court to say that this—that this has been proven. This is going to require a separate hearing. It's going to require a written motion, and we are not going to do that in mid trial.

Crawford: I was going say, we're at trial, and I have tried to bring these issues up.

¶12 On December 3, 2013, a jury found Crawford guilty of criminal possession in violation of § 45-9-102, MCA. The District Court sentenced Crawford as a persistent felony offender and committed him to the Montana State Prison for a term of 20 years, with 10 of those years suspended.

¶13 On December 31, 2013, Crawford filed a posttrial motion to dismiss, arguing that the State's failure to arraign him on the Second Amended Information constituted reversible error. The District Court denied the motion, concluding that, because the Second Amended Information merely dropped one charge, reduced another charge to a lesser-included offense, and did not add any new charges, the Second Amended

6

Information included no substantive amendments. The court explained that pursuant to § 46-11-205, MCA, a defendant is required to be arraigned on an amended information only if an amendment is substantive.

¶14 Crawford timely appealed.

## STANDARD OF REVIEW

¶15 We review a district court's ruling on a motion to suppress to determine whether its findings of fact are clearly erroneous and its interpretation and application of the law are correct. *State v. Fischer*, 2014 MT 112, ¶ 8, 374 Mont. 533, 323 P.3d 891.

¶16 Ineffective assistance of counsel claims are mixed questions of law and fact that this Court reviews de novo. *State v. Crosley*, 2009 MT 126, ¶ 27, 350 Mont. 223, 206 P.3d 932.

## DISCUSSION

¶17 *(1) Whether the District Court erred in denying Crawford's motion to suppress evidence of methamphetamine that law enforcement officers found on Crawford's person after conducting a search incident to his arrest for violating the terms of his parole.*

¶18 Both the Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect individuals from unreasonable searches and seizures. Under Montana law, warrantless searches are per se unreasonable. *State v. Galpin*, 2003 MT 324, ¶ 54, 318 Mont. 318, 80 P.3d 1207. However, when a lawful arrest is made, a police officer may conduct a search incident to arrest without a warrant and "reasonably search the person arrested and the area immediately within his reach in order to locate any weapons the person might use or any evidence that might otherwise be destroyed." *Galpin*, ¶ 54.

7

¶19 Crawford argues that the District Court erred by denying his motion to suppress the evidence of methamphetamine found on his person because "the arresting officers used his parole status as a false pretense for their real intent, which was to conduct a criminal investigation and seek out a purported 'meth lab.'" Although Crawford does not dispute that the arresting officers possessed sufficient cause to arrest Crawford for violating the terms of parole under § 46-23-1023(2), MCA, Crawford contends that the search incident to his arrest was nonetheless unlawful under the so-called "stalking horse" theory.[1] Citing this Court's decision in *State v. Fritz*, 2006 MT 202, 333 Mont. 215, 142 P.3d 806, and the Ninth Circuit Court of Appeals' decision in *United States v. Harper*, 928 F.2d 894 (9th Cir. 1991), Crawford maintains that pursuant to the stalking horse theory, an otherwise lawful parole search may be invalidated under the Fourth Amendment if the search was not for a parole purpose, but was a mere subterfuge for a criminal investigation. Thus, Crawford asks this Court to inquire into the subjective motivations of the arresting officers—Officer Couture and Deputy Read—to determine whether the officers intended to detain Crawford for a "parole purpose" or intended to detain him for a "criminal investigative purpose." If the officers intended the former Crawford concedes that the search was lawful, but if the officers actually intended the latter then according to Crawford the search was unlawful.

---

[1] The term "stalking horse" is often used to refer to a "decoy." Safire's New Political Dictionary 750 (1993). *See also* Webster's Third New International Dictionary 2221 (1976) ("1: a horse or a figure like a horse behind which a hunter stalks game 2: something used to cover up a secret project: MASK, PRETENSE").

¶20  We decline Crawford's request to inquire into the subjective motivations of Officer Couture and Deputy Read to determine the legality of his arrest for a number of reasons. First, we have never adopted the stalking horse theory to invalidate an otherwise lawful parole search. In *Fritz*, the defendant maintained that an otherwise lawful search was unlawful because the "police officers . . . used the probation officers as subterfuge for a criminal investigation." *Fritz*, ¶ 13. However, contrary to Crawford's contention, we did not recognize in *Fritz* the validity of the stalking horse theory. The facts in *Fritz* simply did not require us to do so because there was no merit to Fritz's argument that the officers were not conducting a valid criminal investigation unrelated to Fritz's status as a probationer. *Fritz*, ¶ 13. Thus, it was unnecessary in *Fritz* to consider the validity of the stalking horse theory.

¶21  Second, our precedent has long established that inquiry into the subjective motivations of law enforcement, necessarily required by the stalking horse theory, is inappropriate in assessing the validity of an arrest. In *State v. Farabee*, 2000 MT 265, 302 Mont. 29, 22 P.3d 175, we made clear that an otherwise lawful traffic stop under either the Fourth Amendment or the Montana Constitution remained valid despite the subjective motivations of the individual officers involved. We reasoned that the United States Supreme Court had expressly rejected such an inquiry into the subjective motivations of law enforcement in its decision in *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996), and we concluded that nothing in Article II, Section 11 of the Montana Constitution provided an independent justification for deviating from the United States Supreme Court's decision. *Farabee*, ¶ 30. We explained that our precedent

9

clearly demonstrates that "the lawfulness of a traffic stop under the Montana Constitution depends on whether the officer had a particularized suspicion that an occupant of the vehicle has committed or is committing an offense," not on the actual motivations of individual officers. *Farabee*, ¶ 30.

¶22 Third, notwithstanding Crawford's citation to the Ninth Circuit's decision in *Harper*, we have not been supplied, nor has our research discovered, any authority from other jurisdictions supporting the stalking horse theory. In the wake of the United States Supreme Court's decision in *United States v. Knights*, 534 U.S. 112, 122 S. Ct. 587 (2001), the Ninth Circuit overruled its decision in *Harper*, *see United States v. Stokes*, 292 F.3d 964, 967 (9th Cir. 2002) (explaining that the "circuit's line of cases holding searches of probationers invalid on the ground that they were subterfuges for criminal investigations is, in that respect, no longer good law"), and federal and state courts alike have followed suit in repudiating the stalking horse theory. In *Knights*, a unanimous Supreme Court overturned a Ninth Circuit decision that had invalidated a search of a probationer on the basis that the search was not for probationary purposes, but was a mere subterfuge for a criminal investigation. *See United States v. Knights*, 219 F.3d 1138, 1145 (9th Cir. 2000). The Supreme Court upheld the search as supported by reasonable suspicion in light of the totality of the circumstances and expressly stated that "there is no basis for examining official purpose." *Knights*, 534 U.S. at 122, 122 S. Ct. at 593. Since the Supreme Court's decision in *Knight*s, those courts that have addressed the continued validity of the stalking horse theory have concluded that *Knight*s dealt the theory a fatal blow, reasoning that "when [the Supreme Court] rejected any challenge

10

based on the 'actual motivations' of the officers, the Court confirmed that the Fourth Amendment does not require a stalking horse inquiry." *United States v. Brown*, 346 F.3d 808, 812 (8th Cir. 2003). *Accord United States v. Reyes*, 283 F.3d 446, 463-64 (2d Cir. 2002); *United States v. Williams*, 417 F.3d 373, 378 (3d Cir. 2005); *Stokes*, 292 F.3d at 967; *United States v. Tucker*, 305 F.3d 1193, 1199-1200 (10th Cir. 2002); *State v. Kottman*, 2005 S.D. 116, ¶ 14, 707 N.W.2d 114; *Helphenstine v. Commonwealth*, 423 S.W.3d 708, 716 (Ky. 2014).

¶23 Lastly, even if we were to breathe new life into the stalking horse theory, we would not extend its application to the facts of this case. Although the exact parameters of the theory are ill-defined, the underlying premise of the theory was to prevent parole officers from using their parole authority to conduct a home visit and a subsequent warrantless search to help law enforcement evade the Fourth Amendment's warrant and probable cause requirements for police searches and seizures. *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir. 1988). Here, however, the law enforcement officers did not conduct a home visit or a warrantless search of Crawford's home. Rather, the officers arrested Crawford outside of his home pursuant to § 46-23-1023(2), MCA, for violating the terms of his parole. Section 46-23-1023(2), MCA, provides that "[a]ny probation and parole officer may arrest the parolee without a warrant or may deputize any other officer with power to arrest to do so by giving the officer oral authorization . . . ." Accordingly, based upon this statutory procedure and authorization from Crawford's parole officer, Crawford's arrest was lawful. After making the arrest, the officers conducted a lawful search incident to arrest of Crawford and discovered the

11

methamphetamine. We know of no case, nor does Crawford cite a case, wherein the stalking horse theory has been applied to invalidate an otherwise lawful search incident to arrest outside of the parolee's home. Thus, the stalking horse theory, assuming its validity, would not be applicable to the facts of this case where the law enforcement officers were not attempting to gain entry into Crawford's home.

¶24 We decline to inquire into the subjective motivations of Officer Couture and Deputy Read. Because the officers lawfully arrested Crawford pursuant to § 46-23-1023(2), MCA, for violating the terms of his parole, the search incident to his arrest was lawful. Accordingly, the District Court did not err in denying Crawford's motion to suppress the evidence of methamphetamine found on his person.

¶25 *(2) Whether Crawford received ineffective assistance of counsel when his counsel did not file proposed findings of fact and conclusions of law following the evidentiary hearing relating to Crawford's suppression motion.*

¶26 Both the Sixth Amendment to the United States Constitution and Article II, § 24 of the Montana Constitution guarantee an individual the right to the effective assistance of counsel in all criminal prosecutions. We review claims of ineffective assistance of counsel using the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *State v. Gunderson*, 2010 MT 166, ¶ 67, 357 Mont. 142, 237 P.3d 74. The test requires that a defendant show: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Gunderson*, ¶ 67. Because a defendant must satisfy both prongs of the *Strickland* test, "if a defendant

12

makes an insufficient showing regarding one prong of the test, there is no need to address the other prong." *Gunderson*, ¶ 68.

¶27 Crawford argues that his trial counsel provided ineffective assistance of counsel by failing to file proposed findings of fact and conclusions of law following the evidentiary hearing relating to his motion to suppress the evidence of methamphetamine found on his person. He maintains that his counsel's failure in this regard caused him substantial prejudice.

¶28 In light of our resolution of Issue I, we cannot agree with Crawford that he was prejudiced by his counsel's failure to file proposed findings of fact and conclusions of law. Crawford's sole argument for invaliding the search at both the suppression hearing and in his briefing to the District Court was that the arresting officers used the parole officer as a stalking horse. Similarly, on appeal, Crawford offers no explanation for invalidating the search other than the stalking horse theory. As we have rejected the stalking horse theory, Crawford cannot establish that he was prejudiced. Even if Crawford's counsel had submitted proposed findings of fact and conclusions of law and better articulated the stalking horse theory, the theory was fatally flawed. Thus, given our resolution of Issue I, Crawford's argument that he was prejudiced by his counsel's performance necessarily fails.

¶29 *(3) Whether the District Court abused its discretion by denying Crawford's third discovery request.*

¶30 Crawford argues that the District Court abused its discretion by denying Crawford's third discovery request. He maintains that the State unlawfully withheld: (1)

13

email communications between law enforcement and parole officers; (2) documentation regarding Lehrke as an informant; and (3) an original recording of the arrest.

¶31 The State counters that it complied with discovery by providing all relevant information in its possession. The State maintains that email communications between law enforcement and the parole officers as well as any documentation regarding Lehrke are irrelevant to Crawford's guilt as to the offense charged. Regarding the original recording of the arrest, the State maintains that no video exists other than the video it provided in discovery.

¶32 In all criminal cases the prosecution has a long-established constitutional duty under the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), to provide to the defense any exculpatory or impeachment evidence in its possession. *McGarvey v. State*, 2014 MT 189, ¶ 16, 375 Mont. 495, 329 P.3d 576 (citing *State v. Ellison*, 2012 MT 50, ¶ 15, 364 Mont. 276, 272 P.3d 646; *State v. Cooksey*, 2012 MT 226, ¶ 34, 366 Mont. 346, 286 P.3d 1174). The Montana Legislature has further adopted a statutory scheme that places affirmative duties on the prosecution to provide evidence to the defendant. Section 46-15-322, MCA. Section 46-15-322(1)(e), MCA, requires the State, upon request, to produce "all material or information that tends to mitigate or negate the defendant's guilt as to the offense charged . . . ." Additionally, if the defense requests evidence under subsections (1)(a) through (1)(d) or (2)(a) through (2)(c) of § 46-15-322, MCA, the State has an obligation to disclose relevant evidence regardless of whether the evidence is exculpatory or inculpatory. *State v. Hatfield*, 269 Mont. 307, 312, 888 P.2d 899, 902 (1995). The party seeking to establish a *Brady*

violation or a violation of statutory disclosure bears the burden of establishing a violation. *State v. Giddings*, 2009 MT 61, ¶ 48, 349 Mont. 347, 208 P.3d 363.

¶33 We agree with the State that Crawford has failed to show that the State suppressed exculpatory or otherwise relevant evidence. Crawford maintains that correspondence between law enforcement and parole officers was relevant to show that the arresting officers concealed their true intent to investigate the purported meth lab and that the information "would have assisted in the aforementioned 'stalking horse' defense." This information may have been relevant to the stalking horse theory advanced during the suppression motion of these proceedings, but its relevance to Crawford's guilt or innocence regarding whether he had methamphetamine on his person when arrested has not been advanced. And, as explained above, we reject the stalking horse theory under the facts of this case. Thus, any information concerning the subjective motivations of the arresting officers was irrelevant and not exculpatory evidence during proceedings related to Crawford's suppression motion. Regarding information related to Lehrke as an informant, Crawford does not attempt on appeal to explain the relevance of the information requested or specify what information or document he is actually requesting. Lehrke did not testify at trial or at the suppression hearing and any information regarding the officers' motivation in arresting Crawford is irrelevant. We are thus unable to conclude that the information was potentially exculpatory and relevant to Crawford's "guilt as to the offense charged." Section 46-15-322(1)(e), MCA.

¶34 Lastly, with respect to Crawford's claim that he was unable to view the original video, Crawford failed to introduce evidence, at the suppression hearing or at trial,

15

casting doubt on the authenticity of the video provided by the State. Crawford did not provide expert testimony demonstrating that video produced by the State was not an original. Nor did Crawford elicit any testimony from law enforcement showing an original video existed. Therefore, we conclude that Crawford has failed to demonstrate that the State withheld relevant evidence as to the offense charged. The District Court did not abuse its discretion in denying Crawford's third discovery request.

¶35 *(4) Whether the District Court erred by denying Crawford's posttrial motion to dismiss based upon the Court's failure to arraign him on the Second Amended Information.*

¶36 Section 46-11-205, MCA, provides:

(1) The court may allow an information to be amended in matters of substance at any time, but not less than 5 days before trial, provided that a motion is filed in a timely manner, states the nature of the proposed amendment, and is accompanied by an affidavit stating facts that show the existence of probable cause to support the charge as amended. A copy of the proposed amended information must be included with the motion to amend the information.

(2) If the court grants leave to amend the information, the defendant must be arraigned on the amended information without unreasonable delay and must be given a reasonable period of time to prepare for trial on the amended information.

(3) The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced.

¶37 We have explained that under § 46-11-205(2), MCA, "a defendant must be arraigned on any amendment to the information of substance." *State v. Geren*, 2012 MT 307, ¶ 64, 367 Mont. 437, 291 P.3d 1144. However, a defendant need not be arraigned under § 46-11-205(3), MCA, on any amendment to the information as to form. *Geren*,

16

¶ 64. To differentiate between amendments of form and substance, "we examine whether an amendment to an information or complaint alters the nature of the offense, the essential elements of the crime, the proofs, or the defenses." *Geren*, ¶ 59 (quoting *State v. Scheffer*, 2010 MT 73, ¶ 38, 355 Mont. 523, 230 P.3d 462) (internal quotation marks omitted).

¶38    Crawford argues that the District Court's failure to arraign him on the Second Amended Information constitutes reversible error.  Although Crawford concedes that based on our decision in *State v. Adkins*, 2009 MT 71, 349 Mont. 444, 204 P.3d 1, the State did not substantively amend the information by reducing the charge of criminal possession with intent to the lesser-included offense of criminal possession, he maintains that the State did substantively amend the information by dismissing the charge of criminal forfeiture.

¶39    We disagree with Crawford that the State substantively amended the information by dismissing the charge of criminal forfeiture.  In *Adkins*, we explained that when the State amends an information to charge an alternate, lesser included offense which is supported by an identical factual basis, such an amendment is not a "substantive change[] to the information" under § 46-11-205, MCA.  *Adkins*, ¶¶ 16-17.  In light of our conclusion in *Adkins* that an amendment which adds a lesser-included offense is not a substantive amendment, we have no trouble concluding that an amendment which dismisses a charge is also not a substantive amendment.  Indeed, considering that the purpose of the information is to "apprise the accused of the charges against him," *Geren*, ¶ 55, it would make little sense to conclude that the dismissal of a charge is a substantive

17

change to the information. Such a conclusion would require a district court to arraign a defendant on a non-existent charge. The State did not substantively amend the information within the meaning of § 46-11-205, MCA, by reducing the charge of criminal possession with intent to the lesser-included offense of criminal possession and by dismissing the charge of criminal forfeiture. The District Court correctly denied Crawford's posttrial motion to dismiss.

¶40 *(5) Whether the District Court adequately addressed Crawford's complaints concerning his assigned counsel.*

¶41 Crawford argues that the District Court erred by failing to conduct an "adequate initial inquiry" into his complaints concerning his trial counsel. Crawford maintains that after he complained that he did not have "faith" in his counsel and that his counsel's performance had caused him "prejudice" the court should have inquired into his complaints to determine whether they were "seemingly substantial" pursuant to *State v. Gallagher*, 1998 MT 70, ¶ 14, 288 Mont. 180, 955 P.2d 1371. The State counters that an initial inquiry was not required under the facts of this case because Crawford never requested that the District Court appoint new counsel. Alternatively, the State argues that the District Court conducted an adequate initial inquiry into Crawford's complaints.

¶42 The United States Constitution and the Montana Constitution guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24. We have explained that "[i]f a defendant asserts denial of effective assistance and requests appointment of new counsel, a district court must conduct an 'adequate initial inquiry' to determine whether the defendant's claim is 'seemingly

18

substantial.'" *State v. Happel*, 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016. In the event that the initial inquiry "reveals a seemingly substantial complaint, the court must hold a hearing to address the validity of the complaints, and appoint separate counsel to represent the defendant." *Happel*, ¶ 14. When a defendant does not request substitute counsel, however, "the defendant 'fails to implicate the "seemingly substantial" analysis and the need for a subsequent hearing' on his complaints about his lawyer." *State v. Clary*, 2012 MT 26, ¶ 28, 364 Mont. 53, 270 P.3d 88 (quoting *State v. Racz*, 2007 MT 244, ¶ 20, 339 Mont. 218, 168 P.3d 685) (brackets omitted).

¶43 Here, while Crawford complained to the District Court about his counsel, there is no evidence in the record showing that Crawford ever requested that the District Court appoint new counsel.[2] Crawford never filed a motion requesting the District Court do so. Nor did Crawford ever make an oral request at any of the pretrial hearings or during trial. Absent "a request for another attorney, the District Court was not required to conduct further inquiry into the matter." *Clary*, ¶ 28. Based on the record before us, we conclude that the District Court did not err.

¶44 Affirmed.

/S/ LAURIE McKINNON

---

[2] Crawford also argues that he sent the District Court several handwritten documents that he refers to as "kites." Crawford maintains that in the kites he requested new counsel. However, Crawford concedes that the kites were not admitted in the record, and it is unclear whether the District Court ever saw or was made aware of the documents. To the extent Crawford is attempting to rely on these "kites," non-record-based trial issues must be addressed first in a postconviction relief proceeding rather than on direct appeal. *State v. Bateman*, 2004 MT 281, ¶ 23, 323 Mont. 280, 99 P.3d 656.

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER