FILED

10/10/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0019

DA 17-0019

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 248

CITY OF HELENA,

Plaintiff and Appellant,

v.

CHRISTOPHER G. BROWN,

Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. BDC-2015-411 Honorable DeeAnn Cooney, Presiding Judge |

COUNSEL OF RECORD:

For Appellant:

Timothy C. Fox, Montana Attorney General, Ryan W. Aikin, Assistant Attorney General, Helena, Montana

Leo Gallagher, Lewis and Clark County Attorney, Helena, Montana

For Appellee:

Chad Wright, Chief Appellate Defender, Kristina L. Neal, Assistant Appellate Defender, Helena, Montana

Submitted on Briefs: September 13, 2017

Decided: October 10, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The State of Montana appeals the order entered by the First Judicial District Court, Lewis and Clark County, reversing the Helena Municipal Court's order denying Christopher Brown's motion to suppress evidence related to his arrest for driving under the influence of alcohol (DUI). We reverse the District Court's order, addressing the following issue:

*Did the District Court err by concluding that particularized suspicion did not exist for the investigatory stop?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On March 4, 2015, at around 2 a.m., Officer Noal Petty initiated a traffic stop near the walking mall on Last Chance Gulch in Helena. While engaged in the stop, Officer Petty heard a vehicle excessively revving its engine in the small parking garage located on the walking mall and became concerned that the driver's intention was to squeal its tires or to exit the garage unsafely at a high rate of speed. Because he was occupied with a traffic stop, Officer Petty radioed to see if another officer was available to investigate.

¶3 Officer John Cook was already en route to provide backup to Officer Petty for the initial traffic stop. As Officer Cook was arriving, Officer Petty saw a pickup truck exit the parking garage and pull up to the intersection between the parking garage and Officer Petty's location. As both parties acknowledge, Officer Petty again heard the revving of an engine, but this time seeing the source vehicle. Officer Petty pointed out the truck to Officer Cook and told Officer Cook to stop the vehicle.

2

¶4 Officer Cook headed toward the pickup truck and saw the truck emit a large quantity of smoke as it pulled away from the intersection, and suspected from the excessive smoke that Brown was operating a non-compliant vehicle. Officer Cook initiated a stop of the truck based on the directive he received from Officer Petty and his own observation of excessive smoke. The driver of the vehicle was Christopher Brown, who acknowledged revving the engine. The stop thereafter ripened into a DUI investigation, resulting in Brown's arrest on that charge.

¶5 In the Municipal Court, Brown moved to suppress evidence obtained from the traffic stop, arguing Officer Cook did not have particularized suspicion of wrongdoing to justify the traffic stop. The Municipal Court denied the motion, reasoning that particularized suspicion for Officer Cook's stop arose "because of the excessive smoke," but that, even if Officer Cook did not have the requisite particularized suspicion based upon his own observations, "the stop may nonetheless be made if the [] officer receives from another officer a request to stop the vehicle if the other officer from whom the request was received possessed a reasonable suspicion that a criminal conduct had occurred, was occurring, or was about to occur."

¶6 Brown appealed to the District Court, which reversed the Municipal Court, reasoning that:

> The trial court's finding that Brown was apprehended under Mont. Code Ann. § 61-9-403, for a mechanical violation because he had a faulty muffler or poorly adjusted engine, is clearly erroneous. Brown was stopped for alleged *behavior*. As stated repeatedly by the testifying officers, Brown was believed by the reporting officer to have excessively revved his engine and

3

by the arresting officer to have produced excessive smoke due to revving. However, even if it was assumed that the same truck both revved loudly and created a cloud of smoke, the law of Montana furnishes no basis upon which to conclude that there had been any wrongdoing.

(Emphasis in original.) The State of Montana appeals.

## STANDARD OF REVIEW

¶7 In an appeal from a municipal court, the district court functions as an appellate court and the appeal is confined to a review of the record and questions of law. Section 3-10-115(1), MCA. We review a district court's grant of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law are correct. *State v. Seaman*, 2005 MT 307, ¶ 10, 329 Mont. 429, 124 P.3d 1137 (citations omitted). We review the case as if the appeal was originally filed in this Court and we examine the record independently of the district court's decision. *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643. A court's determination that particularized suspicion exists is a question of fact, which we review for clear error. *State v. Gill*, 2012 MT 36, ¶ 10, 365 Mont. 192, 272 P.3d 60. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *State v. Wagner*, 2013 MT 159, ¶ 9, 370 Mont. 381, 303 P.3d 285 (citing *State v. Cooper*, 2010 MT 11, ¶ 5, 355 Mont. 80, 224 P.3d 636).

## DISCUSSION

¶8 *Did the District Court err by concluding that particularized suspicion did not exist for the investigatory stop?*

¶9 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution prohibit unreasonable searches and seizures. These protections extend to investigative stops of vehicles. *State v. Flynn*, 2011 MT 48, ¶ 7, 359 Mont. 376, 251 P.3d 143. Before effectuating a stop, a police officer must observe circumstances that create "a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. The State bears the burden of proving that an officer had particularized suspicion to stop a vehicle by showing: (1) objective data and articulable facts from which an experienced officer can make certain inferences, and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *State v. Larson*, 2010 MT 236, ¶ 19, 358 Mont. 156, 243 P.3d 1130 (citing *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842). The focus is on objective data and our precedent has established that an "inquiry into the subjective motivations of law enforcement . . . is inappropriate in assessing the validity of an arrest." *State v. Crawford*, 2016 MT 96, ¶ 21, 383 Mont. 229, 371 P.3d 381.

¶10 "Particularized suspicion does not require certainty; it depends on the totality of the circumstances in which the officer is making the determination." *City of Missoula v. Sharp*, 2015 MT 289, ¶ 9, 381 Mont. 225, 358 P.3d 204 (citing *Larson*, ¶ 19). This Court has held

5

that an officer who is unaware of the factual basis for a particularized suspicion may make an investigatory stop upon a directive or request for action from another officer. *State v. Gouras*, 2004 MT 329, ¶ 22, 324 Mont. 130, 102 P.3d 27 (citing *State v. Olmsted*, 1998 MT 301, ¶ 34, 292 Mont. 66, 968 P.2d 1154).

¶11 In its challenge to the District Court's order, the State analogizes this case to *Larson*, where two officers were engaged in a traffic stop when they heard screeching tires at a nearby intersection. Both officers observed a truck spin its tires and cross the intersection with its engine revving. One officer followed the truck for a short distance and observed that the truck had oversized tires and lacked mud flaps, which was a potential vehicle code violation. *Larson*, ¶ 9. We determined that these circumstances, taken together with rational inferences, reasonably justified the traffic stop. *Larson*, ¶ 23.

¶12 In response, Brown relies on *Grinde v. State*, 249 Mont. 77, 813 P.2d 473 (1991). In *Grinde*, officers observed a vehicle lawfully drive down a street and turn the corner. When the vehicle was out of sight, the officers heard a revving engine and tires squealing. *Grinde*, 249 Mont. at 78, 813 P.2d at 474. We held that particularized suspicion did not exist because the officers' personal observations were limited to the car operating in a "safe and prudent manner." *Grinde*, 249 Mont. at 80, 813 P.2d at 475.

¶13 Unlike in *Grinde*, the observations of the officers here were not limited to a vehicle operating in a safe manner. Officer Petty heard an engine revving inside the parking garage, and had concerns that, at 2:00 a.m., the vehicle may exit into the walking mall unsafely. Petty then observed a pickup truck leaving the same parking garage, with an

6

engine that was revving. Responding to Officer Petty's instruction, Officer Cook approached the same truck and observed it emitting excessive smoke, a potential vehicle code violation. Section 61-9-403, MCA. As in *Larson*, when these observations are taken together with rational inferences, they constitute objective data that reasonably warranted the stop and support a finding of particularized suspicion. *Larson*, ¶ 23.

¶14 In reversing the Municipal Court, the District Court posited that on a cold night "it may likely be difficult to distinguish unnecessary exhaust smoke with water vapor emitted from the tailpipe." However, Officer Cook need not have been certain that Brown had actually violated a vehicular statute for the purpose of initiating a traffic stop, only particularized suspicion about such a violation. *See Sharp*, ¶ 9; *State v. Britt*, 2005 MT 101, ¶ 12, 327 Mont. 1, 111 P.3d 217. The excessive smoke emitting from the vehicle supported a reasonable suspicion that Brown was operating a noncomplying vehicle. Officer Cook was also entitled to rely on the directive from Officer Petty based on Petty's earlier observations. *See Gouras*, ¶ 22. From his observation and those of Officer Petty, Officer Cook had particularized suspicion to stop Brown's vehicle.

¶15 On review from a municipal court of record, a district court is confined to review of the record and questions of law. Section 3-10-115(1), MCA. Here, the District Court erroneously found from the evidence that Brown was stopped for "alleged behavior," which required its own assessment and speculation about the record. Rather, there was substantial evidence in the record to support the Municipal Court's findings of fact about

7

the reasons that Brown's vehicle was stopped.  We conclude the District Court erred in reversing the Municipal Court's denial of the motion to suppress.

¶16    Reversed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA