OPINION OF THE COURT
Joseph Fisch, J.
The defendant stands charged with the crime of criminal possession of a weapon in the third degree. The court has conducted a pretrial hearing regarding the admissibility of certain physical evidence which the People seek to introduce at trial. The court denies defendant’s motion to suppress for reasons set forth herein.
FINDINGS OF FACTS
Police Officer Daniel Hourihan of the 52nd Precinct, called by the People, was the sole witness to testify. His testimony was frank, candid, and trustworthy, consistent throughout, having the force and flavor of credibility.
Officer Hourihan, a six-year veteran of the New York City Police Department, was on patrol in the Bronx with his partner at approximately 10:30 p.m. on the evening of February 13, 1990. Both were in uniform, driving in an unmarked car. While heading northbound on Jerome Avenue, the witness saw a livery cab approaching from the opposite direction. The livery cab flashed its high beam headlights on and off at the officers’ vehicle. Believing "the cab driver may be in distress, may be getting robbed”, the officers made a U-turn, followed the livery cab south on Jerome Avenue, then west on 182nd Street. They signaled with lights and horn. The livery cab pulled over.
These events took place within an area specifically designated by the Police Department and known to the officers as a "robbery target area”.
The officers approached the livery cab with guns bolstered. The witness observed that the cab’s rear window was completely tinted as were the windows of the rear doors. He could not see what was happening in the cab, feared for his life, and therefore opened the door. On the floor of the passenger area he observed a black automatic handgun, later found to be a *168 fully operable Super Titan .380 automatic weapon with one live round in the chamber and seven live rounds in the clip. Defendant and one Eddie Rivera were removed from the passenger area and placed under arrest. A subsequent search resulted in the seizure of two ski masks, one from the person of defendant and the second from Rivera.
The livery cab driver later informed the witness that he feared "they were going to do something” but had not yet done so when he signaled the officer.
CONCLUSIONS OF LAW
A taxicab passenger has standing to contest the stop of a vehicle in which he rides and to challenge a search which yields contraband leading to possession charges. (People v Millan, 69 NY2d 514 [1987]; People v Giles, 137 AD2d 1 [1st Dept 1988].)
The investigative stop of the taxicab constituted a "seizure” governed by constitutional strictures against unreasonable searches and seizures. Absent at least a reasonable suspicion that its occupants had been, are then, or are about to be engaged in conduct in violation of law (including traffic infractions), the stopping of an automobile constitutes an impermissible seizure. (See, People v Sobotker, 43 NY2d 559 [1978]; People v Ingle, 36 NY2d 413 [1975]; People v Cantor, 36 NY2d 106 [1975]; Pennsylvania v Mimms, 434 US 106 [1977]; NY Const, art I, § 12; US Const 4th Amend.) Reasonable suspicion has been aptly defined as " 'the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe [that] criminal activity is at hand’ ” (People v Sobotker, supra, at 564; People v Cantor, supra, at 112-113). In this case, such "seizure”, that is, the stop of the taxicab, was fully justified by the officers’ reasonable suspicion of a crime in progress, based upon articulable facts. While they were on patrol in a designated "robbery target area”, a livery cab approached from the opposite direction. Livery cab drivers, in alarming number, have been targeted robbery victims, with tragic consequences. The officers observed the deliberate and continuous flashing high beams of the oncoming livery cab. The courts have held that the use of high beam headlights is a recognized signal of distress justifying the stop of the vehicle. (People v Blakely, 46 NY2d 1026 [1979]; People v Davis, 130 AD2d 268 [1st Dept 1987].)
*169 Thus, the officers acted correctly in stopping the vehicle. They further acted properly in opening the doors to the passenger area. A valid investigatory stop, even one based upon traffic infractions, may be accompanied, as a protective measure, by a command that all occupants exit the car or by the officer’s uninvited opening of a passenger door. (People v Livigni, 58 NY2d 894 [1983]; People v David L., 56 NY2d 698 [1982], cert denied 459 US 866; People v Davis, supra.) This constitutes a minimal intrusion. (People v Harris, 162 AD2d 195 [1st Dept 1990].) In this case, the officers had legitimate reason to believe a robbery may have been in progress. The United States Supreme Court has observed that a significant percentage of murders of police officers involve traffic stops. (United States v Robinson, 414 US 218, 234, n 5.) As Judge, now Chief Judge, Wachtler stated in People v Benjamin (51 NY2d 267, 271 [1980]), "It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety.” (See also, People v Allen, 73 NY2d 378 [1989]; People v Fabian, 126 AD2d 664 [2d Dept 1987].) This court finds that the tinted glass of the rear windows of the livery cab denied these officers the dubious luxury of even that much warning. While the officers did not approach with drawn guns, this court holds that under the instant circumstances they would have been justified had they done so. (People v Davis, supra; People v McLaurin, 120 AD2d 270 [1st Dept 1986].)
The defendant argues that, while "a legitimate predicate for a stop would be a sign of distress on the part of the cab driver * * * if the driver in fact had no legitimate reason to believe he was in any distress * * * if he was stopping [the police] on a hunch * * * he is but an extension of a police officer * * * [A]nything found as a result of that stop would have to be suppressed.” The defense thus apparently contends that private citizens become government agents and subject to the same standards of Fourth Amendment review, when they summon the police. Such contention has no basis in law or in reason.
In People v Davis (supra), the Appellate Division, First Department, holds that even where a taxicab’s bright headlights were on inadvertently, the police were wholly justified in stopping the vehicle, approaching with guns drawn, opening the door, and removing the occupants. Further, this court cannot accept the novel, and, indeed, dangerous notion that a citizen, in good faith fearing for his safety, must have a *170 clearly articulable predicate before seeking immediate police assistance. "Scarcely a day goes by in New York City” during which an innocent life is not lost to firearms wielded by criminals. (See, People v Williams, 164 AD2d 1, 2.) Citizens must be encouraged to communicate with the police regarding suspected criminal activity in general, and certainly when they themselves feel threatened or in danger of becoming crime victims. They should not be inhibited from doing so.
The police having acted properly in stopping the livery cab and opening the passenger doors, the handgun then in plain view was legally seized. (Pennsylvania v Mimms, 434 US 106, supra; People v Lemmons, 40 NY2d 505 [1976].) The defendant and Rivera then having been lawfully arrested, the seizure of the ski masks* was accomplished lawfully incident to the arrest. (People v Perel, 34 NY2d 462 [1974].) Accordingly this court denies the motion to suppress the evidence seized, which evidence the court finds resulted from exemplary police work executed in full compliance with search and seizure imperatives.

 The relevance of the ski masks to the crime charged herein, criminal possession of a weapon in the third degree, is a matter beyond the scope of the hearing, and will be considered when timely raised.