FILED

12/06/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0170

DA 16-0170

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 316

STATE OF MONTANA,

　　　　Plaintiff and Appellee,

　v.

KELLY RAY MASSEY, JR.,

　　　　Defendant and Appellant.

APPEAL FROM:　　District Court of the Fourth Judicial District,
　　　　　　　　In and For the County of Missoula, Cause No. DC 14-393
　　　　　　　　Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Craig Shannon, Attorney at Law, Missoula, Montana

　　　　For Appellee:

　　　　　　Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
　　　　　　Assistant Attorney General, Helena, Montana

　　　　　　Kirsten H. Pabst, Missoula County Attorney, James McCubbin, Deputy
　　　　　　Missoula County Attorney, Missoula, Montana

　　　　　　　　　　Submitted on Briefs:　October 19, 2016

　　　　　　　　　　　　　　Decided:　December 6, 2016

Filed:

_____
　　　　　　　　　Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant Kelly Ray Massey, Jr. (Massey) appeals the order of the Fourth Judicial District Court, Missoula County, denying his motion to suppress.  We affirm and address the following issue:

*Did the District Court err by determining there was particularized suspicion for the traffic stop of Massey's vehicle?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     At approximately 1:00 a.m. on June 16, 2014, Trooper Lynwood Bateman observed a sport-utility vehicle with black plastic, logo-style covers on its tail lights, and initiated a traffic stop because the covers appeared to obscure and diminish the visibility of the vehicle's tail lights.  During the traffic stop, Bateman observed signs that Massey was impaired by drugs and asked him to step out of his vehicle.  As Massey stepped out, Bateman observed a small, plastic bag with possible drug residue in plain view in the passenger door pocket.  Massey stated the bag was not his and declined to consent to a search of the vehicle.  Bateman seized the vehicle and released Massey.  A subsequent search of the vehicle pursuant to a search warrant revealed drugs, a handgun, drug paraphernalia, and other items leading to the filing of charges against Massey for criminal possession of dangerous drugs with intent to distribute, a felony, and criminal possession of dangerous drugs/opiates, a felony.

¶3     Massey moved to suppress the evidence found in his vehicle on the ground that Bateman lacked particularized suspicion to initiate a traffic stop.  At the suppression

2

hearing, Bateman testified that he was approximately 500 feet behind Massey's vehicle when he noticed the tail light covers, which he stated "were black and covered up the light." Bateman initiated the traffic stop "because [the tail light covers] were obscuring and diminishing the visibility of the lights to the rear," and he needed to stop the vehicle to determine if the lights were visible from more than 1,000 feet, the distance required by statute.

¶4 Under cross examination, Bateman testified that the tail light covers functioned as stencils, which "left portions of the red visible, but they obscured it." The following exchange also took place:

> Q. Okay. Do you see [these stencil-like covers] fairly often in Missoula in the line of work that you're in?
> A. I see them, yeah, I would say fairly often.
> Q. Okay. Do you stop everybody with those?
> A. If I'm able to make a traffic stop, yes.
> Q. Okay.
> A. And, I mean, but that's all dependent on the situation, other traffic and, you know, what I have going on that day.
> Q. And there was no other reason for your stop of the vehicle Kelly Massey was in?
> A. That's correct.

¶5 Bateman compared the effect of the tail light covers to placing fingers in front of a flashlight, which "stops some of that light from going through. And, therefore, the visibility is less and the light is diminished."

¶6 The District Court denied Massey's motion to suppress. Massey entered into a plea agreement, but reserved his right to appeal the District Court's ruling. Massey appeals.

3

**STANDARD OF REVIEW**

¶7     We review a motion to suppress to determine whether a district court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. *State v. Plouffe*, 2014 MT 183, ¶ 18, 375 Mont. 429, 329 P.3d 1255 (citing *State v. Dawson*, 1999 MT 171, ¶ 13, 295 Mont. 212, 983 P.2d 916); *State v. Chilinski*, 2014 MT 206, ¶ 16, 376 Mont. 122, 330 P.3d 1169. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *State v. Ellis*, 2009 MT 192, ¶ 20, 351 Mont. 95, 210 P.3d 144 (citing *State v. Lewis*, 2007 MT 295, ¶ 17, 340 Mont. 10, 171 P.3d 731).

**DISCUSSION**

¶8     *Did the District Court err by determining there was particularized suspicion for the traffic stop of Massey's vehicle?*

¶9     The Montana and United States Constitutions prohibit unreasonable searches and seizures, Mont. Const. art. II, § 11; U.S. Const. amend. IV, which includes brief investigatory stops, *State v. Ross*, 2008 MT 369, ¶ 9, 346 Mont. 460, 197 P.3d 937 (citing *State v. Loiselle*, 2001 MT 174, ¶ 7, 306 Mont. 166, 30 P.3d 1097); *State v. Roy*, 2013 MT 51, ¶ 15, 369 Mont. 173, 296 P.3d 1169; *City of Missoula v. Moore*, 2011 MT 61, ¶ 16, 360 Mont. 22, 251 P.3d 679. Investigatory stops are valid where a law enforcement officer observes a vehicle "in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an

4

offense." Section 46-5-401(1), MCA. Particularized suspicion requires, in the totality of the circumstances, "(1) objective data from which an officer can make certain inferences, and (2) a resulting particularized suspicion that the occupant of the motor vehicle is or has been engaged in wrongdoing or was a witness to criminal activity." *State v. Flynn*, 2011 MT 48, ¶ 7, 359 Mont. 376, 251 P.3d 143; *accord Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. The focus of an inquiry into whether particularized suspicion existed is "entirely on what facts were available to the officer." *State v. Duong*, 2015 MT 70, ¶ 14, 378 Mont. 345, 343 P.3d 1218; *accord State v. Clawson*, 2009 MT 228, ¶ 11, 351 Mont. 354, 212 P.3d 1056; *Flynn*, ¶ 11.

¶10 Section 61-9-204(5), MCA, provides:

> A person may not operate a motor vehicle on a highway with taillamps that are covered by a lens or a plastic cover or with a tinted or colored material, substance, system, or component placed on or in front of rear lamps, taillamps, license plate lamps, or rear lamp combinations that obscures the taillamps or diminishes the distance of visibility required by this section.

The "distance of visibility" stated in this section requires that tail lamps be "plainly visible from a distance of 1,000 feet to the rear of the vehicle." Section 61-9-204(1), MCA. Thus, there are two ways the statute may be violated: by covering the tail lights in a manner that (1) obscures the tail lamps, or (2) diminishes the tail lamps such that they are not "plainly visible" at 1,000 feet.

¶11 Massey argues that the statutory term "obscures" means "not clearly seen or easily distinguished" and is synonymous with "conceal," which Bateman's testimony did not establish. He argues that because his covers allowed light to shine through, they did not

5

"obscure" the tail lights. He interprets Bateman's testimony as espousing a "zero tolerance policy" for tail light covers that leads to vehicle stops without regard to actual suspicion on the part of the officer that the statutes are being violated.

¶12 "Obscures" is not defined by the statute but generally means, as acknowledged in part by Massey, "to make dark, dim, or indistinct" or which is "not clearly seen or easily distinguished." *Merriam-Webster's Collegiate Dictionary* 856 (Frederick C. Mish ed., 11th ed. 2012). Bateman testified that he stopped Massey because the tail light covers "were obscuring and diminishing the visibility of the lights to the rear." He also stated that the covers were "black and covered up the light." Clearly, these observations establish a suspicion that the tail lights were obscured. The District Court credited Bateman's testimony, finding that "the tail light covers at issue diminished the visibility of the lights by covering the red portion of the tail lights." Further, Bateman's observations, initially made from a point approximately 500 feet behind Massey's vehicle, also raised a suspicion concerning the second way to violate the statute, by not having tail lights "plainly visible" at 1,000 feet. As such, the District Court correctly concluded that Bateman had particularized suspicion of a violation of § 61-9-204(5), MCA, that justified a traffic stop.

¶13 Stopping all vehicles with tail light covers pursuant to a "zero tolerance policy," regardless of actual suspicion of a statutory violation, would clearly be improper. Tail light covers are not per se prohibited by § 61-9-204(5), MCA. However, covers must comply with the statute and, here, Bateman's testimony demonstrated that his stop of

6

Massey was supported by a particularized suspicion that Massey's covers violated § 61-9-204(5), MCA.

¶14 Affirmed.

/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA