

ORIGINAL

DA 20-0286

FILED
01/04/2022
Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA
Case Number: DA 20-0286

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 3

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

LOGAN RAY GARDNER,

      Defendant and Appellant.

FILED

JAN 0 4 2022

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DC 19-61
Honorable Shane Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Lauren Amongero, Law Student Intern, Koan Mercer, Assistant Appellate Defender, Helena, Montana

          Pete Wood, Attorney at Law, Boise, Idaho

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Ellen Donohue, Mineral County Attorney, Debra A. Jackson, Deputy County Attorney, Superior, Montana

Submitted on Briefs: November 17, 2021

Decided: January 4, 2022

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Logan Ray Gardner appeals from the Order and Opinion Affirming Denial of Motion to Suppress entered by the Fourth Judicial District Court, Mineral County, on March 24, 2020, affirming the Mineral County Justice Court's Findings of Fact and Conclusions of Law on Defendant's Motion to Suppress. Gardner entered a conditional guilty plea before the Justice Court to Aggravated Driving Under the Influence (DUI), third offense, in violation of § 61-9-465, MCA, reserving the right to appeal the Justice Court's denial of his motion to suppress evidence. Gardner appealed to the District Court, arguing the Justice Court erred in not suppressing evidence gathered from the traffic stop, as the officers lacked particularized suspicion to initiate the stop based solely on Gardner "flicking" his high beams on and off once. The District Court affirmed the Justice Court and Gardner appeals to this Court. We restate the dispositive issue on appeal:

*Whether the officers had particularized suspicion to justify their investigatory stop of Gardner.*

¶2 We reverse and remand with instructions to grant Gardner's motion to suppress, as the officers lacked particularized suspicion to initiate a traffic stop of Gardner's vehicle.

**PROCEDURAL AND FACTUAL BACKGROUND**

¶3 The Mineral County Justice Court is not a court of record. Rather than trying the case anew on appeal before the District Court, the parties stipulated to the following facts:

¶4 At approximately 1:16 a.m. on April 29, 2019, Mineral County Sherriff's Deputies Alex Hughes and Ryan Funke stopped Gardner and his girlfriend Angela Scovell on Interstate 90 near mile marker 36 in Mineral County. Gardner was driving the vehicle.

2

The deputies were traveling westbound, and Gardner was travelling eastbound. At the time of this stop, the portion of the interstate where the vehicles passed was under construction, rendering Interstate 90 more akin to a two-lane highway with one lane designated for each direction of travel, rather than a four-lane interstate with a median. The section of highway where the stop occurred is straight and flat, and not curved or on a grade.

¶5 The officers stopped Gardner for "flicking" or flashing his high beams or "brights" at the officers, who were less than 1000 feet from Gardner at the time. At the suppression hearing, Officer Hughes testified Gardner's flashing his brights caused Officer Hughes to experience momentary blindness. Officer Hughes also testified he did not recall whether the patrol vehicle he was travelling in at the time had its brights activated or not. The officers' dashcam video was not working at the time of the stop. Officer Funke did not testify.

¶6 Gardner and Scovell also testified at the suppression hearing. Both Gardner and Scovell confirmed Gardner had flashed the officers with his brights. However, both Gardner and Scovell testified the brights on the officers' vehicle were on. Gardner further testified he flashed the officers in an attempt to get the driver of the oncoming vehicle to dim the vehicle's brights. All parties agreed Gardner only momentarily flicked his high beams, but he did so when the officers were within 1000 feet of his vehicle. Officer Hughes testified Gardner's flicking his brights was the sole basis for the stop.

¶7 Following the stop and making contact with Gardner, the officers smelled alcohol and a DUI investigation ensued. Gardner was eventually cited for Aggravated DUI,

3

contempt, and a seat-belt violation. Gardner challenged the stop in a motion to suppress, which the Justice Court denied, ruling the stop was valid. Gardner pleaded guilty to Aggravated DUI, third offense, on October 30, 2019, but reserved his right to appeal the suppression issue. The contempt and seat-belt charges were dropped.

## STANDARD OF REVIEW

¶8 A case originating in a justice court and first appealed to a district court is reviewed by this Court as if it had been appealed directly to this Court. *City of Helena v. Brown*, 2017 MT 248, ¶ 7, 389 Mont. 63, 403 P.3d 341. We review a justice court's ruling on a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of law are correct. *Brown*, ¶ 7.

## DISCUSSION

¶9 *Whether the deputies had particularized suspicion to justify their investigatory stop of Gardner.*

¶10 On appeal, Gardner maintains the deputies' seizure of him was unconstitutional and any evidence gathered from the investigatory stop must be suppressed because § 61-9-221(1), MCA, does not prohibit momentary flashing of one's high beams to warn other drivers. As § 61-9-221(1), MCA, did not prohibit Gardner from flashing his brights to warn the oncoming driver the vehicle's high beams were on and this was the sole stated basis for the stop, he contends the officers lacked any particularized suspicion an occupant of the vehicle had committed a traffic violation to justify conducting the investigatory stop of his vehicle. The State counters the deputies did not misapprehend or misunderstand the

4

law and the District Court correctly interpreted and applied § 61-9-221(1), MCA, to prohibit even momentary flashing of high beams within 1000 feet of an oncoming vehicle.

¶11 The Fourth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, and Article II, Section 11, of the Montana Constitution prohibit unreasonable searches and seizures. *State v. Massey*, 2016 MT 316, ¶ 9, 385 Mont. 460, 385 P.3d 544; *State v. Flynn*, 2011 MT 48, ¶ 7, 359 Mont. 376, 251 P.3d 143. In addition, the Montana Constitution contains an explicit right to privacy under Article II, Section 10. When a search or seizure "specifically implicate[s] the right of privacy," we analyze and apply Article II, Sections 10 and 11 together. *State v. Staker*, 2021 MT 151, ¶ 9, 404 Mont. 307, 489 P.3d 489 (quoting *State v. Hardaway*, 2001 MT 252, ¶ 32, 307 Mont. 139, 36 P.3d 900). Sections 10 and 11 together are "broader where applicable than the privacy protection provided under the Fourth and Fourteenth Amendments to the United States Constitution." *Staker*, ¶ 9.

¶12 A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and thus must accord with the prohibition on unreasonable searches and seizures. *Flynn*, ¶ 7. An officer "may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA. "To establish particularized suspicion, the State must show (1) objective data from which an officer can make certain inferences, and (2) a resulting particularized suspicion that the occupant of the motor vehicle is or has been engaged in wrongdoing." *Flynn*, ¶ 7.

5

Particularized suspicion is determined by examining the totality of the circumstances. *Flynn*, ¶ 7.

¶13 Citing *State v. Lacasella*, 2002 MT 326, ¶ 30, 313 Mont. 185, 60 P.3d 975, Gardner contends an officer's mistake of law cannot establish particularized suspicion to justify an investigatory stop. In other words, if the deputies are wrong § 61-9-221(1), MCA, prohibits a momentary flashing of high beams, they lacked particularized suspicion to initiate the traffic stop and our analysis ends there. The State does not dispute this, but rather contends the officers did not make a mistake of law. Our decision in *Lacasella* did not cite the Montana Constitution but rather relied on caselaw applying the Fourth Amendment from the United States Ninth Circuit Court of Appeals.[1] Since our decision in *Lacasella*, however, the United States Supreme Court has decided *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S. Ct. 530, 536 (2014), and established an officer's mistake of law *can* establish particularized suspicion to justify an investigatory stop under the Fourth Amendment. Under *Heien*, reasonable suspicion or particularized suspicion "can rest on a mistaken understanding of the scope of a legal prohibition," if the mistake is reasonable under the circumstances. *Heien*, 574 U.S. at 60, 135 S. Ct. at 536. "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be

---

[1] This Court has not addressed whether Article II, Sections 10 and 11, of the Montana Constitution provide greater protections than the federal constitution when an officer's suspicion of wrongdoing rests on a mistaken understanding of the law. While Gardner cites to Article II, Sections 10 and 11, in his briefing, he provides no further analysis on this issue. As such, we decline to decide that issue here. *See State v. Covington*, 2012 MT 31, ¶ 21, 364 Mont. 118, 272 P.3d 43.

*objectively* reasonable." *Heien*, 574 U.S. at 66, 135 S. Ct. at 539 (emphasis in original). For a mistake of law to be reasonable, a "statute must pose a really difficult or very hard question of statutory interpretation" and "such cases will be exceedingly rare." *Heien*, 574 U.S. at 70, 135 S. Ct. at 541 (Kagan, J., concurring) (internal quotations omitted).

¶14　Thus, we must first determine whether the plain language of § 61-9-221, MCA, prohibits momentary flashing of high beams to warn oncoming drivers. If it does not, we must then determine whether the officer's mistake of law was reasonable or, alternatively, whether the act of flashing one's high beams could have given rise to a particularized suspicion the occupant of the vehicle was engaged in wrongdoing on its own under the circumstances.

¶15　When interpreting statutes, this Court looks to the plain meaning of the language used in the statute. *See State v. Rossbach*, 2016 MT 189, ¶ 8, 384 Mont. 269, 378 P.3d 1160; *see also* § 1-2-101, MCA. "[O]ur objective is to implement the objectives the legislature sought to achieve." *Mont. Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499. "We construe a statute by reading and interpreting the statute as a whole, 'without isolating specific terms from the context in which they are used by the Legislature.'" *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 334 Mont. 1, 185 P.3d 1003 (quoting *City of Great Falls v. Morris*, 2006 MT 93, ¶ 19, 332 Mont. 85, 134 P.3d 692). In interpreting the plain language of the statute, we must disregard trifles and interpret the law reasonably. *Rossbach*, ¶ 8 (citing §§ 1-3-224, -233, MCA).

¶16    Section 61-9-221, MCA, provides, in pertinent part:

> Whenever a motor vehicle is being operated on a roadway or shoulder
> adjacent to a roadway during the times specified in 61-9-201, the driver shall
> use a distribution of light, or composite beam, capable of revealing persons
> and vehicles at a safe distance in advance of the vehicle, subject to the
> following requirements and limitations:
> (1) Whenever the driver of a vehicle approaches an oncoming vehicle within
> 1,000 feet, the driver shall use a distribution of light or composite beam that
> does not project into the eyes of the oncoming driver. The lowermost
> distribution of light specified in 61-9-220(2) must avoid glare at all times,
> regardless of road contour and loading.

The first paragraph of the section generally provides the commonsense proposition drivers

must use lights when driving at night or when there is insufficient natural light to see

clearly. Subsection 1 provides a limitation on the use of lights during the specified times.

It consists of two sentences. The first sentence requires drivers to dim their brights when

approaching an oncoming driver within 1000 feet. The second sentence references the

requirements of § 61-9-220(2), MCA, for a car's headlights and adds additional

qualifications for the lower beam of light drivers must use when approaching oncoming

vehicles—one that "avoid[s] glare at all times, regardless of road contour and loading."

Read together, the two sentences of subsection (1) require drivers to use a lower beam of

light when approaching oncoming vehicles, and that lower beam must "avoid glare at all

times."

¶17    Officer Hughes testified Gardner's flicking of his brights was the sole basis for the

stop. As the use of brights was the sole basis for the stop, the second sentence of the

subsection is not implicated – the deputies did not contend Gardner's low beams failed to

"avoid glare at all times." Thus, the relevant question is whether the flicking of the high

8

beams is prohibited under the first sentence of subsection (1). The first sentence requires the "use" of lights "that do[] not project into the eyes of the oncoming driver" when within 1000 feet. Section 61-9-221(1), MCA. In the law, a prescription to "use" something implies a temporal component. Black's Law Dictionary explains "use" means "[t]he application or employment of something; esp., a long-continued . . . employment of a thing for the purpose for which it is adapted, as distinguished from a[n] . . . employment that is merely temporary or occasional." *Use*, *Black's Law Dictionary* (11th Ed. 2019). During the events at issue, the testimony of all the witnesses established Gardner was using his low beams. Gardner was not using his high beams, he merely flashed them on and off once to warn the deputies they were using their high beams. In fact, Gardner's momentary flashing of his high beams on and off emphatically demonstrated Gardner was not using his high beams as he approached the oncoming driver.

¶18 This reading of the statute comports with the Legislature's clear intent in passing § 61-9-221, MCA, and its exhortation to interpret statutes reasonably. *See* § 1-3-224, -233, MCA. Section 61-9-221, MCA, is about safety. The purpose of the statute is to prevent oncoming motorists from blinding each other and thereby creating a hazardous situation. Gardner's momentary flash of his high beams on and off one time did not cause the visual impairment the statute prohibits. Flashing one's high beams is a common form of signal from one driver to another: to warn a driver they have forgotten to dim their brights, or to warn of hazardous roads conditions, a traffic accident, or wildlife on the road ahead. In this case, both Gardner and Scovell testified Gardner flashed his brights in an effort to get

9

the deputies to dim their brights, which were blinding Gardner. If the Legislature intended to prohibit this common practice, they would have done so in more explicit terms. In the words of late Justice Antonin Scalia, the Legislature "does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468, 121 S. Ct. 903, 910 (2001).

¶19 The Legislature first enacted this statute in 1955. *See* 1955 Mont. Laws. ch. 263, § 133. It was drawn largely from the 1954 Uniform Vehicle Code promulgated by the National Committee on Uniform Traffic Laws and Ordinances, with the Legislature choosing to prohibit the use of high beams within 1000 feet of an oncoming driver, rather than the Uniform Vehicle Code's suggested 500 feet.[2] It has remained largely unchanged since 1955. *But see* 1997 Mont. Laws ch. 431, § 18. It appears the National Committee was successful in advocating for their uniform laws, as over thirty states have adopted similar language to regulate the use of lights at night.[3] From our research, it appears most

---

[2] This change too indicates the Legislature did not intend for § 61-9-221, MCA, to prohibit flashing one's brights in warning within 1000 feet of the oncoming driver. The State suggests this common practice is not outlawed, but acceptable when the oncoming driver is more than 1000 feet away. But even a conscientious driver, desirous of following the law, would find it difficult to determine whether an oncoming vehicle on a dark, two-lane road with no visible landmarks is 1000 feet away or 750 feet away—especially if that vehicle's brights are illuminated.

[3] Ala. Code § 32-5-242 (2021); Alaska Admin. Code tit. 13, § 04.020 (2021); Ariz. Rev. Stat. Ann. § 28-942 (2021); Ark. Code Ann. § 27-36-211 (2021); Cal. Veh. Code § 24409 (LexisNexis 2021); Colo. Rev. Stat. § 42-4-217 (2021); Conn. Gen. Stat. § 14-96u (2021); Del. Code Ann. tit. 21, § 4350 (2021); Fla. Stat. § 316.238 (2021); Ga. Code. Ann. § 40-8-31 (2021); Idaho Code Ann. § 49-923 (2021); Ind. Code § 9-21-7-5 (2021); Iowa Code § 321.415 (2021); Kan. Stat. Ann. § 8-1725 (2021); Ky. Rev. Stat. Ann. § 189.040 (LexisNexis 2021); La. Rev. Stat. Ann. § 32:322 (2021); Md. Code Ann., Transp. § 22-223 (LexisNexis 2021); Mich. Comp. Laws § 257.700 (2021); Minn. Stat. § 169.61 (2021); Miss. Code Ann. § 63-7-33 (2021); Mo. Rev. Stat. § 307.070 (2021); Nev. Rev. Stat. § 484D.215 (2021); N.J. Stat. Ann. § 39:3-60 (2021); N.M. Stat. Ann.

of these states have not had occasion to address in over fifty years whether this provision prohibits momentary flashing of one's headlights. A few of these states have interpreted the statute to allow for flashing one's high beams on and off, as such use in not inconsistent with the text or purpose of the statute. *See Guilford v. Frost*, 269 F. Supp. 3d 816, 827 (W.D. Mich 2017) (interpreting Michigan state law to not allow a traffic stop for a "mere flash"); *Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 468 (Minn. Ct. App. 2012); *State v. Woods*, 621 N.E.2d 523, 525 (Ohio Ct. App. 1993). Two of these states have found such conduct to be prohibited, based on the facts presented. *See Kunz v. State*, No. A-10273, 2009 Alas. App. LEXIS 186, at *1-2 (Dec. 16, 2009) (finding a violation when the driver had modified his truck's lighting so his bright auxiliary "moose lights" also activated whenever he flashed his high beams); *State v. Westmiller*, 730 N.W.2d 134, 139 (N.D. 2007) (finding the driver violated the statute after flashing her brights off and on three times within 500 feet of the oncoming vehicle when there was no evidence the oncoming vehicle's brights were on or there was a hazard ahead). Notably, we found many cases where the fact pattern involved an officer flashing his or her high beams at an oncoming driver in an effort to get the motorist to dim his or her brights. *See, e.g., Bazso v. Kozlowski*, No. CV95 32 79 78 S, 1996 Conn. Super. LEXIS 3160 (Aug. 12, 1996); *State*

---

§ 66-3-831 (2021); N.D. Cent. Code § 39-21-21 (2021); Ohio Rev. Code Ann. § 4513.15 (LexisNexis 2021); Okla. Stat. tit. 47, § 12-203.2 (2021); Or. Rev. Stat. § 811.515 (2021); R.I. Gen. Laws § 31-24-23 (2021); S.C. Code Ann. § 56-5-4780 (2021); Tenn. Code Ann. § 55-9-407 (2021); Va. Code Ann. § 46.2-1034 (2021); Wash. Rev. Code § 46.37.230 (2021); W. Va. Code § 17C-15-21 (2021); Wyo. Stat. Ann. § 31-5-924 (2021).

*v. Kimball*, 111 P.3d 625 (Idaho Ct. App. 2005); *Conley v. State*, 352 S.E.2d 394 (Ga. Ct. App. 1986); *State v. Dossett*, 851 S.W.2d 750 (Mo. Ct. App. 1993); *State v. Rorvik*, 2005 MT 344N, 2005 Mont. LEXIS 540 (Mont. 2005)[4]; *State v. Adams*, No. 94CA35, 1995 Ohio App. LEXIS 4841 (Oct. 25, 1995); *cf. City of Roswell v. Forrest*, No. 29,649, 2009 N.M. App. Unpub. LEXIS 433 (Nov. 19, 2009) (officer testified he saw multiple oncoming vehicles flash their high beams at defendant to warn him his high beams were engaged before pulling the defendant over for failure to dim his high beams). Clearly, the practice is widespread and accepted in states that have adopted the Uniform Vehicle Code. We conclude the deputies were mistaken Gardner violated § 61-9-221, MCA, when he flashed his high beams on and off at them one time.

¶20 The next step is to determine whether it was reasonable for the deputies to suspect Gardner's conduct was illegal or whether their mistake of law was reasonable. The standard when examining whether mistake of law was reasonable in the Fourth Amendment context is "not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation. Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty bound to enforce." *Heien*, 574 U.S. at 67, 135 S. Ct. at 539-40. In *Heien*, an officer stopped the defendant because only one of the vehicle's stop lamps

---

[4] We do not cite this case as binding precedent as it was decided as a memorandum opinion pursuant to Section I, Paragraph 3(c) of the Montana Supreme Court Internal Operating Rules. We cite it to demonstrate this fact pattern has also come before this Court.

was working. State courts in North Carolina determined during earlier proceedings in the case that the North Carolina statute at issue only required one working stop lamp and the officer's basis for stopping the defendant was based on a misunderstanding of the law. In its Fourth Amendment analysis, the United States Supreme Court focused on the specific language of the statute and whether there was any ambiguity. The United States Supreme Court found the officer's mistake of law on that issue was reasonable, as different provisions of the statute at issue suggested both that only one stop lamp was required and that all taillights must be functional and in working order. The Supreme Court explained the statutory requirement "vehicles 'have all originally equipped rear lamps or the equivalent in good working order' arguably indicat[es] that if a vehicle has multiple 'stop lamp[s]' all must be functional." *Heien*, 574 U.S. at 68, 135 S. Ct. at 540 (quoting N.C. Gen. Stat. § 20-129(d) (2007)) (second alteration in original). The Supreme Court declined to fault the officer for misapprehending the statute given its ambiguity. As Justice Elena Kagan clarified in her concurrence, cases where a mistake of law will be reasonable are "exceedingly rare" and occur only when a statute is "genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work." *Heien*, 574 U.S. at 70, 135 S. Ct. at 541 (Kagan, J., concurring) (internal quotation omitted). We find no such ambiguity in the statute at issue here. Unlike the statute at issue in *Heien*, there is no ambiguity where different provisions of the statute suggest opposing results. The deputies' misunderstanding of the law was not constitutionally reasonable. The deputies did not have particularized suspicion premised solely on a violation of § 61-9-221, MCA, to stop

13

Gardner's vehicle, especially when the evidence presented to the Justice Court indicated the deputies had failed to dim their brights.

¶21 Further from our review of the record on appeal, the entirety of the circumstances presented did not give rise to particularized suspicion. Gardner and Scovell testified he flicked his lights in response to the officers' failure to dim their brights. The contested conduct was not a violation of any Montana statute. Deputy Hughes testified the sole reason for stopping Gardner was the flicking of his high beams on and off one time. Standing alone this conduct does not create a particularized suspicion of criminal activity. We do not foreclose that under different circumstances flashing one's high beams may contribute to a finding of particularized suspicion, but under the circumstances of this case, the deputies did not have particularized suspicion to stop Gardner. The seizure violated Gardner's constitutional rights to be free from unreasonable searches and seizures. Any evidence collected from the stop must be suppressed.

## CONCLUSION

¶22 Reversed and remanded with instructions for the Justice Court to grant Gardner's motion to suppress.

_____
Justice

We concur:

_____

14

_____

_____

_____
Justices