# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0365
Filed April 15, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**James Gerald Deaton III,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Brendan Greiner, Judge.

———————————

**AFFIRMED**

———————————

Austin Jungblut and Natalie Shroyer (until withdrawal) of Parrish
Kruidenier L.L.P., Des Moines, attorneys for appellant.

Brenna Bird, Attorney General, Anagha Dixit (until withdrawal) and Adam
Kenworthy, Assistant Attorneys General, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., Chicchelly, J., and Mullins, S.J.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

James Deaton III appeals his conviction for operating while intoxicated (OWI) after a stipulated trial on the minutes of testimony. He challenges the denial of his motion to suppress the evidence obtained during a traffic stop of his vehicle. Because the stop falls under the community caretaking exception to the warrant requirement, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

Sergeant Brian Kempnich of the Clive Police Department was patrolling Hickman Road in the early morning hours of October 14, 2024, when he passed a red Chevrolet Equinox driven by Deaton. Sergeant Kempnich was driving a marked law enforcement vehicle, and there were almost no other vehicles on the road at the time. Once Sergeant Kempnich was about four or five car lengths ahead of the Equinox, he saw its high beams flashing in his rearview mirror. Sergeant Kempnich estimated that the Equinox's high beams flashed between ten and fifteen times, which he found unusual. Concerned that the driver needed help, Sergeant Kempnich slowed to let the Equinox pass while he tried to look inside. Unable to see anything, Sergeant Kempnich activated his emergency lights and stopped the vehicle.

During the stop, Sergeant Kempnich noted signs that Deaton was intoxicated: a strong odor of an alcoholic beverage, bloodshot and watery eyes, slurred speech, and appearing "a little confused." Deaton denied that he had been drinking but was unable to complete one field sobriety test and refused the rest. He was arrested and transported to the police department where chemical testing showed a blood alcohol content of 0.211.

The State charged Deaton with OWI. Before trial, Deaton moved to suppress all evidence obtained during the traffic stop, claiming it violated federal and state constitutional protections against warrantless searches. The State resisted, claiming that Sergeant Kempnich had probable cause to stop Deaton. Alternatively, the State argued that the traffic stop fell under the community caretaking exception to the warrant requirement. After a hearing, the district court denied Deaton's motion under the community caretaking exception.

## SCOPE AND STANDARD OF REVIEW

We review the denial of a motion to suppress based on constitutional grounds de novo. *State v. Cyrus*, 997 N.W.2d 671, 676 (Iowa 2023). "Each case must be evaluated in light of its unique circumstances." *Id.* (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)). De novo review requires that we "review the entire record to independently evaluate the totality of the circumstances." *Id.* (citation omitted). We defer to the district court's factual findings, particularly those involving witness credibility, but we are not bound by them. *Id.*

## DISCUSSION

The Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect the right of the people to be free from "unreasonable searches and seizures." Evidence obtained in violation of these provisions is inadmissible, "no matter how relevant or probative the evidence may be." *State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005) (citation omitted). Warrantless searches and seizures are per se unreasonable unless they fall under one of the exceptions to the warrant requirement. *State v. Bradford*, 620 N.W.2d 503, 506 (Iowa 2000).

Deaton contends the district court erred by denying his motion to suppress based on the community caretaking exception to the warrant requirement. The exception is based on the community caretaking functions of police, which are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Coffman*, 914 N.W.2d at 244 (quoting *Cady v. Dombrowski*, 413 U.S. 443, 441 (1973)). Instead, community caretaking functions involve an officer's duty to help a citizen if the officer has a reasonable belief that the citizen may need help. *Id.*

The community caretaking exception follows a three-step analysis: "(1) was there a seizure within the meaning of the Fourth Amendment?; (2) if so, was the police conduct bona fide community caretaker activity?; and (3) if so, did the public need and interest outweigh the intrusion upon the privacy of the citizen?" *Id.* at 245. The State concedes that the traffic stop was a seizure under the state and federal constitutions.

## I. Was Sergeant Kempnich engaged in bona fide community caretaking activity when he stopped Deaton?

An officer is involved in a bona fide community caretaker activity if based on the facts available at the time of the seizure, a reasonable person would believe the officer's actions were appropriate. *Id.* at 251. The supreme court has recognized three categories of conduct form bona fide community caretaking activity: "(1) the emergency aid doctrine, (2) the automobile impoundment/inventory doctrine, and (3) the 'public servant' exception." *Id.* at 244. "The emergency-aid and public-servant doctrines are closely related." *Id.* The difference involves the seriousness and exigency of the event:

> Under the emergency aid doctrine, the officer has an immediate, reasonable belief that a serious, dangerous event is occurring. In contrast, the officer in a public servant situation might or might not believe that there is a difficulty requiring his general assistance. For example, an officer assists a motorist with a flat tire under the public servant doctrine, but an officer providing first aid to a person slumped over the steering wheel with a bleeding gash on his head acts pursuant to the emergency aid doctrine.

*Id.* at 244–45 (cleaned up).

The circumstances at the time Sergeant Kempnich stopped Deaton would allow a reasonable person to believe Deaton might need help. The sergeant explained that he did not see flashing high beams before passing the Equinox and that it is unusual for drivers to flash their high beams in the manner that Deaton did:

> Usually people won't sit there and continuously flash their high beams. They might flash them once or twice for whatever reason they are flashing them for, I don't know, maybe try to see something in the road or what not, so usually when this happens, this usually means to me that somebody is trying to get my attention.[1]

---

[1] Flashing headlights or high beams are recognized as a sign of distress or warning to other drivers. *See, e.g.*, *Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 469 (Minn. Ct. App. 2012) ("[I]t is a common practice for drivers to flash their high beams to warn other drivers of hazards, or to signal others to adjust their own headlights."); *State v. Gardner*, 501 P.3d 925, 930 (Mont. 2022) ("Flashing one's high beams is a common form of signal from one driver to another: to warn a driver they have forgotten to dim their brights, or to warn of hazardous roads conditions, a traffic accident, or wildlife on the road ahead."); *People v. Marquez*, 563 N.Y.S.2d 987, 989 (N.Y. Sup. Ct. 1990) ("The courts have held that the use of high beam headlights is a recognized signal of distress justifying the stop of the vehicle."); *State v. Carlile*, No. 17270, 1999 WL 301422, at *4 (Ohio Ct. App. May 14, 1999) ("Flashing one's high beams is a common form of signal from one driver to another."); *cf. State v. Hilpipre*, 395 N.W.2d 899, 900 (Iowa Ct. App. 1986) (noting that a police officer "flashed his high-low beams to signal the driver of the truck to stop").

Sergeant Kempnich also testified that he was concerned Deaton "was in distress or needed help with something" and gave two examples:

> Sometimes we've had people that have had medical emergencies, like they've had a passenger that might be their wife that's in labor, or needing help, or it could be a domestic violence situation where the victim is the driver in that case and is needing help with trying to get our attention, from maybe if there is a passenger in the seat, needing help from getting away from them.

Sergeant Kempnich repeated his reasoning to another officer who arrived at the scene shortly after the stop, showing that Sergeant Kempnich stopped Deaton's vehicle for genuine community caretaking purposes. *See Coffman*, 914 N.W.2d at 257–59 (holding that under the Iowa Constitution, the State must prove with objective and subjective facts that the officer was engaging in community caretaking). Under the circumstances, a reasonable person could believe that Deaton was seeking help by flashing his high beams at the sergeant's patrol car between ten and fifteen times. *See, e.g.*, *Carlile*, 1999 WL 301422, at *4 (finding an officer's interpretation of flashing high beams as an attempt by a citizen to gain the officer's attention was objectively reasonable); *State v. Campbell*, 789 A.2d 926, 928 (Vt. 2001) (finding an officer had a reasonable belief that the occupants of a vehicle parked in a lot on a stormy night were seeking his assistance by flashing their lights at a marked police cruiser); *cf. State v. Day*, 263 S.W.3d 891, 905 n.12 (Tenn. 2008) (holding that a motorist's act of flashing her lights and pointing at the defendant's vehicle was "not sufficiently specific and articulate to support the stop and seizure of the defendant," though it "would certainly be sufficient to support a stop of [the motorist] to investigate the nature of her distress").

Deaton argues that the circumstances of the stop are like those the supreme court found violated a defendant's constitutional rights in *State v.*

*Smith*, 919 N.W.2d 1 (Iowa 2018). In *Smith*, an officer was investigating a single-vehicle accident that ended with the vehicle in a ditch at 4:30 a.m. one Saturday. 919 N.W.2d at 2. Dispatch relayed that a passerby had seen someone who may have been the driver walking away from the vehicle without injuries. *Id.* The officer was unable to find the driver but saw a van pull into the driveway of a nearby residence before leaving. *Id.* After checking the van's license plate, the officer learned that it was registered to the same address as the registered owner of the vehicle in the ditch. *Id.* The officer testified that he stopped the van as part of a welfare check because he was concerned that the vehicle's driver was inside or the people in the van were looking for the driver. *Id.* at 3.

The supreme court held that the officer's conduct in *Smith* fell outside the community caretaking exception because "[t]he van clearly did not need assistance" when the officer stopped it:

> The possibility exists that the driver of the vehicle in the ditch needed assistance and that the van was looking for the driver, but this is seemingly belied by the fact that the van left the scene, presumably after noticing the presence of a law enforcement vehicle.
>
> Deputy Smith did testify that he was "checking on the welfare of the people involved," given the possibility that the van either was looking for the driver of the vehicle in the ditch or had already picked him up. Yet the van appeared not to want Deputy Smith's help, and from everything the deputies had heard and seen, there was no indication of an injury or other emergency.

*Id.* at 5.

Deaton argues that like the driver of the van in *Smith*, he showed he was not looking for help by driving past Sergeant Kempnich when he slowed. The difference is that the driver in *Smith* never signaled a need for help, while a reasonable person could conclude that Deaton had. We agree with the

district court that under the circumstances, "[i]t was perfectly reasonable for the officer to believe that the red Equinox was attempting to get his attention by flashing the lights 10 to 15 times." Thus, Sergeant Kempnich was involved in bona fide community caretaking activity when he stopped Deaton.

## II. Did the public need and interest outweigh the intrusion on Deaton's privacy?

An officer engaged in bona fide community caretaking activity "may act reasonably for the purpose of giving aid to a person in distress and finding information bearing upon the cause of that distress." *State v. Mitchell*, 498 N.W.2d 691, 694 (Iowa 1993). We have already found that Sergeant Kempnich had a reasonable belief that Deaton needed help. To inquire further, the sergeant first slowed his patrol car to allow the Equinox to catch up to him and tried to discern what was happening inside, but the Equinox passed by too quickly for Sergeant Kempnich to see anything. Sergeant Kempnich was justified in stopping Deaton long enough to figure out if he needed help. A stop continuing for longer than that would have violated Deaton's constitutional rights. *See, e.g.*, *State v. Nikolsky*, No. 02-1813, 2004 WL 151070, at *7 (Iowa Ct. App. Jan. 28, 2004) (finding a defendant's privacy interests outweighed the officer's need to investigate a possible public safety concern when the officer stopped the defendant's vehicle, asked him to get into the patrol car, and engaged in a lengthy discussion on a variety of topics). But at once, it was obvious to Sergeant Kempnich that Deaton showed signs of intoxication, giving him probable cause to investigate further.

Under the circumstances, we agree that the stop falls under the community caretaking exception to the warrant requirement and affirm the denial of Deaton's motion to suppress.

**AFFIRMED.**